**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                      No. 97-4827

ALVON ALLEN THOMAS, a/k/a Kebo,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Richard C. Erwin, Senior District Judge.
(CR-97-118)

Submitted: October 20, 1998

Decided: December 10, 1998

Before ERVIN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

J. David James, SMITH, JAMES, ROWLETT & COHEN, L.L.P.,
Greensboro, North Carolina; Eric Richard Nordman, Westerville,
Ohio, for Appellant. Walter C. Holton, Jr., United States Attorney,
Clifton T. Barrett, Assistant United States Attorney, Greensboro,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Alvon Allen Thomas appeals from his conviction for possession with intent to distribute crack cocaine in violation of 21 U.S.C.A. § 841(a)(1) (West 1981 & Supp. 1998), and the 230-month sentence imposed by the district court. On appeal, he contends that the district court erred by: (1) denying his motion to appoint substitute counsel; (2) instructing the jury as to the charged offense; (3) refusing to instruct the jury as to the lesser included offense of possession of a controlled substance; (4) sentencing him under the guidelines for crack cocaine rather than for cocaine powder; (5) failing to review the evidence and make specific factual findings to support the sentencing enhancement for obstruction of justice; (6) denying his motion to suppress evidence; and (7) refusing to allow the admission of certain evidence, in violation of Thomas' right to due process. In his three supplemental briefs, Thomas expands upon issues raised in the formal briefs and raises the additional argument that the district court erred in allowing Dr. Shirley Brinkley to testify as an expert witness. Finding no error, we grant Thomas' motions for leave to file supplemental briefs and to file his reply brief out of time and affirm Thomas' conviction and sentence.

I.

While conducting a stationary driver's license check in Winston-Salem, North Carolina, Trooper Kevin Martin of the North Carolina State Highway Patrol observed a white BMW pull onto the right shoulder of the road, remain for thirty to forty-five seconds, and then approach the checking station. Trooper Martin saw the operator of the vehicle--later identified as Thomas--move about in the vehicle and lean toward the passenger side of the vehicle; he did not see Thomas throw anything from the vehicle. Following this brief stop, Thomas drove the BMW to where Martin was stationed and handed Martin his driver's license.

2

As Trooper Martin reached for the license, he detected a strong odor of marijuana coming from the vehicle. He asked Thomas to pull to the left shoulder of the road and exit the vehicle. As Thomas got out of the car, Martin asked if Thomas had a weapon on him. Thomas said no. Martin then conducted a pat down search. When Trooper Martin put his hands on Thomas' waistband, Thomas jumped back into the car, wrapped his arms around the steering wheel and said that he needed to call his attorney. Martin requested that Thomas exit the vehicle. When he refused, Trooper Martin attempted to pull Thomas from the car. Martin then told Thomas that if he did not get out of the vehicle, he would be sprayed with pepper spray. Thomas then exited the vehicle and attempted to run from Trooper Martin. Trooper Martin held him and arrested him for delaying and obstructing an officer.

Trooper Martin placed handcuffs on Thomas and placed him on the ground. Trooper Martin and Trooper Naylor searched Thomas and found in his pants pocket five bags containing a hard rock-like substance of what appeared to be crack cocaine. Following Thomas' arrest, the officers searched the BMW and located a pager, a $100 bill, a set of pocket scales, marijuana residue in the ashtray, and various documents.

Dr. Shirley Brinkley, a forensic toxicologist for Forsyth County, performed the chemical analysis on the contraband seized from the BMW. She testified at trial that the residue found in the ashtray was marijuana. She also determined after extensive testing that the substance in four of the five small bags seized from Thomas was crack cocaine. Because the items in the five bags had similar appearances, Dr. Brinkley testified that she tested the contents of only four of the five bags. She determined that the net weight of the substance was 135.3 grams.

Thomas, proceeding pro se with standby counsel, called several witnesses and testified on his own behalf. At the conclusion of the trial, the jury returned a verdict of guilty. The district court sentenced Thomas to 230 months imprisonment to be followed by a five-year term of supervised release. Thomas timely noted his appeal.

II.

Thomas first contends that the district court erred in refusing to delay the start of the trial and to appoint substitute counsel. We

review this decision for abuse of discretion. See United States v. Corporan-Cuevas, 35 F.3d 953, 956 (4th Cir. 1994). In determining whether the district court abused its discretion in denying Thomas' motion for a continuance and to appoint new counsel, this court considers whether the motion was timely, whether the district court sufficiently inquired into Thomas' complaint, and whether the degree of conflict between Thomas and his appointed counsel amounted to a "total lack of communication" and thus prevented an adequate defense. See id. (quoting United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988)).

Thomas was arrested on June 2, 1997. On June 6, 1997, when he appeared before a magistrate judge, he waived appointment of assigned counsel. Assistant Federal Public Defender Greg Davis was appointed to represent Thomas. At the July 7, 1997, motion hearing, Thomas requested that Davis be replaced because he was "insufficient."

Davis moved to withdraw on July 8, 1997. At the hearing on this motion, Thomas asserted that he was not "comfortable" with Davis, Davis did not meet with him before the hearing, and Davis did not argue what was written in the motions. With the trial scheduled to begin on July 14, 1997, the trial judge informed Thomas that he could remain with Davis, retain other counsel, or represent himself. Davis provided Thomas with a copy of the government's prosecution file. The court did not relieve Davis, but retained him as standby counsel. On the day of trial, Thomas, having acknowledged the possible punishment he faced and that he would be held to the same standards as an attorney, stated that he would represent himself.

"[T]he court is entitled to take into account the . . . state interest in proceeding on schedule" when considering whether a defendant's request for substitution of counsel is timely made. Gallop, 838 F.2d at 108. In this case, Thomas requested new counsel one week before trial. Concerning the substantiality of the complaints Thomas had against Davis, the court is required to inquire into the factual basis for the defendant's dissatisfaction. See United States v. Mullen, 32 F.3d 891, 896 (4th Cir. 1994). Thomas' basis for requesting new counsel was counsel's failure to meet with him prior to the hearing on the motion to suppress, failure to argue at the hearing the points raised in

4

the suppression motion, and that Davis' "spirit does not compare with mine." Having reviewed the arguments counsel did make during the suppression hearing, we find that these reasons are insufficient to show that there was a total breakdown in communication. See Mullen, 32 F.3d at 896-97.

Because we find that the district court conducted an adequate inquiry as to the basis for Thomas' request for new counsel and find that the stated reasons do not evidence a total lack of communication preventing an adequate defense, we find no abuse of discretion in the district court's denial of Thomas' motion for substitution of counsel. See Corporan-Cuevas, 35 F.3d at 956; Gallop, 838 F.2d at 108.

Likewise, we find that the district court conducted a sufficient inquiry into Thomas' desire and ability to represent himself. Before allowing a defendant to proceed pro se, the court must conduct an adequate inquiry and advise the defendant of the"dangers and disadvantages of self-representation" to assure that the waiver of counsel is knowing, intelligent, and voluntary. See Faretta v. California, 422 U.S. 806, 835 (1975); Gallop, 838 F.2d at 110-11.

In this case, Thomas stated that he understood the charge against him and the possible punishment. He asked whether he could defend himself in federal court. The district court explained the order of events in a jury trial and asked if Thomas had questions or wanted anything else explained. Thomas understood that Davis was appointed as standby counsel to answer any questions he might have, and Thomas stated that he appreciated Davis' availability. A refusal to accept an able court-appointed attorney is a voluntary waiver of counsel, Gallop, 838 F.2d at 109. We find that Thomas knowingly, voluntarily, and intelligently waived his right to appointment of counsel and chose to proceed pro se.

III.

Thomas next contends that the district court erred in instructing the jury as to the charged offense. During the charge to the jury, the district court instructed on the elements of distribution of a controlled substance. The Assistant United States Attorney noted this mistake and the court then instructed as to possession. Again, the Assistant

5

United States Attorney informed the court that the indictment charged possession with intent to distribute. The court then correctly instructed the jury on this offense. Five minutes into deliberations, the jury returned, inquiring about the definition of "possession." A juror also inquired whether they "could have one maybe without the other." The district court responded by stating that to convict Thomas, they must find that he possessed the drugs and that he had the intent to distribute the drugs.

Because the instructions, taken as a whole, fairly state the law as to possession with intent to distribute, we find no plain error in the court's instructions. See United States v. Cobb , 905 F.2d 784, 788-89 (4th Cir. 1990); United States v. McCaskill, 676 F.2d 995, 1001 (4th Cir. 1982) (standard of review). Here, the district court inadvertently instructed the jury as to possession only and distribution only, and finally, correctly instructed as to possession with intent to distribute. Because the jury had before them the indictment charging possession with intent to distribute and did receive the proper instruction prior to deliberations, the district court's mistaken instructions do not rise to the level of plain, reversible error. See United States v. Hanley, 974 F.2d 14, 18-19 (4th Cir. 1992).

IV.

Thomas also contends that the district court erred in refusing to instruct the jury as to the lesser included offense of possession of a controlled substance. A defendant is not entitled as a matter of course to a lesser included offense instruction. See United States v. Walker, 75 F.3d 178, 179 (4th Cir. 1996). Rather, such an instruction is warranted where "proof of the element that differentiates the two offenses [is] sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense." Id. at 180. On the evidence presented in this case, an instruction on mere possession was not warranted. The quantity of crack cocaine involved--135 grams--supports an intent to distribute. See United States v. Roberts, 881 F.2d 95, 99 (4th Cir. 1989). The packaging of the drugs into five one-ounce packages may evidence an intent to distribute. See United States v. Childs, 463 F.2d 390, 392 (4th Cir. 1972). Also, the absence from the location of drug paraphernalia which would provide a means of ingesting the drugs and the lack of

6

any evidence of Thomas' personal use of crack cocaine may be considered in determining whether the evidence could be construed to show mere possession. See United States v. Wright, 131 F.3d 1111, 1112-13 (4th Cir. 1997), cert. denied, #6D 6D6D# U.S. ___, 66 U.S.L.W. 3782 (U.S. June 8, 1998) (No. 97-9034); United States v. Levy, 703 F.2d 791, 792 (4th Cir. 1983) (presence of pipes customarily used for the purpose of consuming cocaine considered to support instruction on lesser included offense).

In this case there is no evidence of Thomas' personal drug use. In fact, he denied using crack and he denied even possessing the packages of crack. Because this element is not sufficiently in dispute so as to warrant an instruction on mere possession of a controlled substance, the district court appropriately did not give such an instruction. See Walker, 75 F.3d at 180.

V.

Thomas next contends that the district court erred in sentencing him under the guidelines for crack cocaine rather than for cocaine powder. He asserts that the government failed to prove that the substance was crack cocaine. However, Dr. Brinkley was qualified as an expert in the field of forensic toxicology and testified as to the differences between crack cocaine and cocaine hydrochloride. She then explained the testing she performed on the substance seized from Thomas, and she gave her opinion that the substance was crack cocaine. Likewise, two law enforcement officers--Trooper Martin and Trooper Naylor--testified that, based on their training and experience, the substance seized from Thomas was crack. See United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir. 1976) (lay testimony and circumstantial evidence is sufficient to identify controlled substances). Although there was no evidence presented that the substance was prepared by processing powder cocaine and sodium bicarbonate, the guideline definition merely states that crack is usually prepared in this manner. The definition acknowledges that not all forms of crack are prepared by using sodium bicarbonate. See U.S. Sentencing Guidelines Manual § 2D1.1(c), Note (D) (1995).

Thomas also challenges the enhanced sentences provided for crack cocaine over those provided for cocaine powder offenses. We have

7

previously upheld the sentencing ratio against equal protection and due process challenges, and we decline to revisit this issue. See United States v. Ford, 88 F.3d 1350, 1365 (4th Cir. 1996); United States v. Fisher, 58 F.3d 96, 99-100 (4th Cir. 1995).

VI.

Thomas next challenges the obstruction of justice enhancement to his sentence, contending that the district court failed to review the evidence and make specific factual findings to support the sentencing enhancement. He asserts that his "theory of defense was that the cocaine found on his person was planted by the police. The truth or falsity of that defense is not an issue." The Sentencing Guidelines provide for a two-level adjustment for obstruction of justice. See USSG § 3C1.1. Perjury constitutes an obstruction of justice. See USSG § 3C1.1, comment. (n. 3(b)). Before imposing the enhancement, the district court must make an independent finding that the defendant provided false testimony on a material matter with the intent to deceive. See United States v. Dunnigan , 507 U.S. 87, 95 (1993).

Addressing Thomas' objection to the enhancement in the presentence report, the district court reminded Thomas of his trial testimony that the troopers did not locate any cocaine or cocaine base on his person. Similarly, Thomas denied this fact at the earlier hearing on his motion to suppress evidence. After the court overruled Thomas' objection to the presentence report, the government urged the court to make explicit findings and proposed such findings. The court then stated that it did so find. The findings proposed by the government were also contained in the presentence report, and the district court adopted the findings contained therein. We find that the district court appropriately enhanced Thomas' sentence for obstruction of justice and that the district court's adoption of the proposed findings does not --as Thomas asserts--implicate the "concern that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty." Dunnigan, 507 U.S. at 96-97.

VII.

Thomas also challenges the district court's decision to deny his motion to suppress evidence. Trooper Martin lawfully stopped

8

Thomas at the routine license checkpoint. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444 (1990). Upon identifying the strong odor of marijuana coming from Thomas' car, Martin was justified in further detaining Thomas. See United States v. Sifuentes, 504 F.2d 845, 848 (4th Cir. 1974) (strong marijuana odor places contraband in plain view). Based on Trooper Martin's observation of the marijuana smell, Thomas' actions prior to approaching the checkpoint, Martin's experience that weapons frequently accompany drugs, and the potential hazards involved in roadside encounters with a suspect, Trooper Martin was justified in conducting a protective search to uncover any concealed weapons. See United States v. Baker , 78 F.3d 135, 137 (4th Cir. 1996).

Thomas' actions in jumping back into the car, wrapping his hands around the steering wheel, and refusing to exit the vehicle constituted resisting, delaying, or obstructing an officer under N.C. Gen. Stat. § 14-223 (Michie 1993). See State v. McNeill, 283 S.E.2d 565, 567 (N.C. App. 1981) (flight from a lawful investigatory stop provides probable cause to arrest individual for violation of N.C. Gen. Stat. 14-223.). Because the arrest was proper, the search incident to arrest was proper, and the district court appropriately denied Thomas' motion to suppress the drugs found during that search.

VIII.

The next issue presented by Thomas is that the district court erred and denied him due process of law by allowing the government to admit certain evidence and refusing to allow him to admit certain evidence. Specifically, he challenges the admission of the fact that he received citations for misdemeanor offenses of which he had not been convicted. These questions were relevant to connect Thomas to an incriminating letter that was seized from the vehicle along with the citations and other personal effects bearing Thomas' name. The district court properly allowed these questions. Thomas also challenges the government's inquiries concerning the number of times he had been stopped for driving while his license was revoked. These questions were proper to impeach his earlier claim that his license was valid at the time of his arrest.

The government's questions regarding Thomas' 1995 conviction for carrying a concealed weapon were improper because this offense

9

is punishable by only 60 days. See N.C. Gen. Stat. § 15A-1340.23 (Michie 1983). However, Thomas did not answer these questions and cannot thereby claim that he was prejudiced. Additionally, Thomas freely admitted that he had two or three previous concealed weapons convictions. We find that any error resulting from the improper questions about Thomas' 1995 conviction was harmless.

Thomas also contends that the district court erred in refusing to allow him to admit into evidence the troopers' prior testimony and police reports. However, Thomas was allowed to question the witnesses concerning these documents, and in fact, while questioning a witness, did read one officer's complete statement. However, Thomas never marked the proffered documents as an exhibit, never had a witness identify the documents, and did not attempt to admit the documents into evidence. Rather, Thomas repeatedly attempted to read the contents of the documents to the jury. We find no abuse of discretion in the district court's evidentiary rulings. See United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir. 1988).

IX.

In his supplemental brief, Thomas raises an additional issue concerning the propriety of the district court's admission of Dr. Brinkley as an expert witness. Because Thomas did not object to Dr. Brinkley's qualifications or her testimony, our review is for plain error. See Fed. R. Crim. P. 52(b); United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995).

Dr. Brinkley testified about her considerable educational background and training. Although she admitted that most of her work was in the area of testing urine samples for the presence of drugs, she had some experience in testing drugs and determining their type, purity, and quantity. She testified as to the differences between crack cocaine and cocaine hydrochloride. She then explained the tests she performed on the substance seized from Thomas and gave her opinion that the substance was crack cocaine. We find no abuse of discretion by the district court in allowing Dr. Brinkley to testify concerning the manner in which she tested the drugs, the results of the testing, and her conclusions from those results. See United States v. Powers, 59

10

F.3d 1460, 1470-71 (4th Cir. 1995); United States v. Harris, 995 F.2d 532, 534 (4th Cir. 1993).

Moreover, even if the district court erred in allowing Dr. Brinkley to express her opinion that the substance was crack cocaine, such error was not plain error. The admission of Dr. Brinkley's opinion did not affect Thomas' substantial rights. See United States v. Moore, 11 F.3d 475, 481 (4th Cir. 1993) (finding plain error only if error affects substantial rights and impairs integrity or reputation of judicial proceedings). Whether the drug seized was cocaine powder or crack cocaine was not disputed during the trial. The two law enforcement officers involved in Thomas' arrest--Trooper Martin and Trooper Naylor--testified that, based on their training and experience, the substance seized from Thomas was crack. See Dolan, 544 F.2d at 1221. Also, these officers described the drug found during the search as a "hard, rock-like substance." This is a description typical of crack cocaine. See USSG § 2D1.1(c), Note (D). Thomas presented no evidence supporting his argument that the substance was not crack cocaine. Rather, he based his defense on his contention that the officers planted the drugs in the vehicle. We conclude that the district court's decision to allow Dr. Brinkley to testify as an expert was not an abuse of discretion and did not amount to plain error.

X.

In conclusion, we grant Thomas' motions to file supplemental briefs and to file his reply brief out of time. We have considered the arguments raised therein, and we affirm Thomas' conviction and his sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11